**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CHRISTINA M.,

               Plaintiff,

     v.                                        3:18-CV-0332
                                                    (CFH)
ANDREW M. SAUL,[1]
Commissioner of Social Security

               Defendant.
_____

**APPEARANCES:**                         **OF COUNSEL:**

LACHMAN & GORTON              PETER A. GORTON, ESQ.
Attorneys for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.    DANIEL STICE TARABELLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Attorneys for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL
United States Magistrate Judge**

## MEMORANDUM-DECISION & ORDER

      Currently before the Court, in this Social Security action filed by Christina M. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

---

[1]    Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

(Dkt. Nos. 9 and 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1983, making her 30 years old at the application date and 33 years old at the ALJ's decision. Plaintiff reported completing the eighth grade with special education services and an unsuccessful attempt to obtain her GED. Plaintiff has no past relevant work. At the initial level, Plaintiff alleged disability due to panic disorder, anxiety, depression, and obsessive-compulsive disorder.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on November 6, 2014, initially alleging an onset date of January 2, 2009. Plaintiff subsequently amended her alleged onset date to her applicate date. (T. 43-44, 77, 90.) [2] Plaintiff's application was initially denied on February 25, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Shawn Bozarth on March 20, 2017. (T. 30-69.) On April 20, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 6-26.) On February 6, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 70-76.)

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2

### C. The ALJ's Decision

First, the ALJ found that Plaintiff has not engaged in substantial activity since November 6, 2014, the application date. (T. 11.) Second, the ALJ found that Plaintiff's opioid dependence, anxiety disorders, personality disorder, post-traumatic stress disorder ("PTSD"), depressive disorder, learning disorder, and obesity are severe impairments. (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 12-14.) Specifically, the ALJ considered Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma- and stressor-related disorders). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except she "should work in a low stress job defined as occasional changes in the work routine, a goal oriented, rather than production pace job, occasional decision-making and occasional judgment required." (*Id.* at 14.) Fifth, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 20.) Sixth, the ALJ found that Plaintiff can perform other jobs existing in significant numbers in the national economy. (*Id.* at 20-21.) Therefore, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 21)

### D. Arguments

**1. Plaintiff's Motion for Judgment on the Pleadings**

3

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ failed to include any limitations in work pace and/or attendance, interacting with the general public, accepting instructions, or responding appropriately to criticism from supervisors, despite undisputed medical opinions that Plaintiff has moderate or greater limitations in those areas of functioning; (2) the ALJ improperly gave great weight to the opinion of non-examining state Agency consultant S. Juriga, Ph.D.; (3) the ALJ erred in giving only partial weight to the opinion of consultative examiner Amanda Slowik, Psy.D.; (4) the ALJ improperly accounted for Plaintiff's limitations to memory and attention/concentration; and (5) the ALJ made factual conclusions unsupported by substantial evidence. (Dkt. No. 9, at 10-22 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ improperly substituted his opinion for the undisputed medical opinions on the issues of work pace and attendance. (*Id.* at 10-12.) Plaintiff also argues the ALJ improperly substituted "his lay opinion as to what he believes would be a proper course of treatment for that of a competent medical opinion" and substituted "what a person without any psychiatric impairments might appropriately do[,]" failing to consider any potential reasons why Plaintiff may not have sought other or additional treatment. (*Id.* at 21-22.)

Plaintiff next argues that the Step Five determination is not supported by substantial evidence because the ALJ's RFC determination did not account for the full extent of Plaintiff's limitations (including those related to work pace, absenteeism, memory, and attention/concentration) and was not supported by substantial evidence. (*Id.* at 22.)

### 2. Defendant's Motion for Judgment on the Pleadings

First, Defendant argues that Plaintiff has not demonstrated the ALJ's RFC determination is unsupported by substantial evidence and that the ALJ properly weighed the opinions of Dr. Juriga, Dr. Slowik, and counselor Sherry Thompson-Hill, LCSW. ((Dkt. No. 11, at 3-11 [Def.'s Mem. of Law].) Defendant also argues that these three opinions did not warrant greater restrictions in work pace or attendance than those already included in the RFC finding. (*Id.* at 12-13.)

Second, Defendant argues that the RFC finding adequately accounted for Plaintiff's memory and attention/concentration limitations and that Plaintiff has not shown how the record in this case justified greater limitations. (*Id.* at 13-14.)

Third, Defendant argues that the ALJ properly relied on Plaintiff's failure to pursue treatment. (*Id.* at 14-16.) Defendant also argues that, "even if the ALJ erred by relying on Plaintiff's lack of mental health treatment, he still reviewed the entire record and provided a variety of other reasons for questioning the severity of Plaintiff's alleged symptoms[,]" rendering any error harmless. (*Id.* at 15-16.)

### 3. Plaintiff's Reply

On reply, Plaintiff sets forth largely the same arguments as presented in her brief. (Dkt. No. 12, Attach. 1, at 2-4 [Pl.'s Reply Mem. of Law].) First, Plaintiff reasserts her argument that the ALJ improperly substituted his judgment on the issues of work pace and attendance and failed to account for time off-task and absenteeism in the RFC. (*Id.* at 2-3.) Second, Plaintiff argues the ALJ erred by relying on Dr. Juriga's opinion and struggled to explain how Dr. Juriga articulated the basis for her opinion. (*Id.* at 3.)

Plaintiff also reasserts that "the opinions of non-examiners are of little value, particularly in the context of ascertaining limitations caused by psychiatric issues." (*Id.*) Finally, Plaintiff again argues that the RFC does not properly account for her limitations to memory and attention/concentration and that "the ALJ failed to properly account for limitations to memory, attention, and concentration by limiting her to low stress work." (*Id.* at 4.)

## II.     LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.    ANALYSIS

#### A.    Whether Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Opinion Evidence, Plaintiff's RFC, and the Evaluation of Plaintiff's Symptoms

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ

8

must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8)). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The regulatory factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, but consideration of whether the source examined the claimant replaces the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6). The regulations also require that the ALJ "'explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist.'" *Campbell v. Astrue*, 713 F. Supp. 2d 129, 140 (N.D.N.Y. 2010) (quoting 20 C.F.R. § 416.927(e)(2)(ii); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all of the evidence claimants present regarding their symptoms, including their "daily activities" and the

9

"location, duration, frequency, and intensity of [their] pain or other symptoms." *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p)). SSR 16-3p indicates that the evaluation of symptoms is a two-step process.[3] 2017 WL 5180304, at *2. The Social Security Administration ("SSA") "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . ." *Id.* If SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication

---

[3] The Court notes that the standard for evaluating subjective symptoms has not changed in the Social Security Regulations. Rather, use of the term "credibility" has been eliminated, and SSR 16-3p makes it clear that the subjective symptom evaluation is not an evaluation of the claimant's character. 2017 WL 5180304.

10

taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

### 1. The ALJ's Analysis of the Evidence

In considering Plaintiff's RFC, the ALJ found that she can perform light work in a low-stress job "defined as occasional changes in the work routine, a goal oriented, rather than production pace job, occasional decision-making and occasional judgment required." (T. 14.) The ALJ indicated the RFC was supported by Dr. Juriga's opinion, Dr. Slowik's opinion in part, Plaintiff's minimal mental health treatment, and the clinical findings during mental status examinations by the consultative examiner and Plaintiff's providers. (T. 20.)

In considering Plaintiff's impairments, the ALJ found she has mild limitations in understanding, remembering or applying information, no limitations in interacting with others, and moderate limitations in concentrating persisting or maintaining pace and adapting or managing oneself. (T. 12-13.) At the initial determination level in February 2015, non-examining consultant Dr. Juriga opined that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 84-89.) Dr. Juriga also indicated that Plaintiff has anxiety and would have limitation in accepting criticism easily and may have limitation in dealing with stress appropriately, but ultimately concluded she was capable of sustaining

11

simple, unskilled work. (T. 87-88, 346-48.) In his decision, the ALJ indicated that Dr. Juriga's opinion supported the ALJ's findings regarding Plaintiff's limitations in the four broad areas of mental functioning and afforded this opinion "great weight in determining [Plaintiff's RFC] because it is a medical opinion and is based on Dr. Juriga's review of the evidence and knowledge of the disability programs." (T. 13-14, 18-19.) The ALJ also noted that the opinion was "supported by the clinical findings during the consultative examination and during subsequent mental status examinations by [Plaintiff's] providers." (T. 19.)

In considering Plaintiff's RFC and evaluating her symptoms, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record." (T. 15.) The ALJ indicated that the "clinical findings during the consultative examination do not support [her] allegations regarding the severity of her impairments[,]" noting that, during the examination, she was cooperative and well-groomed with adequate social skills, normal posture, appropriate eye contact, adequate expressive and receptive language skills, depressed and anxious affect, dysthymic mood, normal and goal directed thought process, impaired attention and concentration, impaired recent and remote memory skills due to emotional distress, below average cognitive functioning, a somewhat limited fund of information, and fair insight and judgment. (T. 16-17, 341-42.) The ALJ concluded that these findings suggested that Plaintiff has no limitations in her ability to interact with others but some limitations in her ability to understand and

12

remember instructions, maintain attention and concentration, and deal with stress. (T. 17.)

The ALJ stated that, "[o]ne would expect that an individual with these alleged symptoms would seek treatment[,]" noting Plaintiff told the consultative examiner she had never been hospitalized for psychiatric treatment and she had only attended one mental health appointment at the time of the consultative examination. (T. 15, 339, 350-54.) The ALJ also indicated that the "evidence of record does not support [Plaintiff's] allegations regarding the severity and frequency of her panic attacks and agoraphobia." (T. 17, 369, 374, 377, 401, 404, 452.)

The ALJ noted that Plaintiff's report of activities of daily living including dressing, bathing, grooming, cooking, cleaning, and doing laundry, but acknowledged Plaintiff's reports that she is unable to shop independently; is afraid to drive; does not use public transportation; does not handle her money; and has difficulty connecting with family members, attending events, and receiving guests in her home "due to her alleged anxiety." (T. 17, 343.) The ALJ also noted Plaintiff's "history of substance abuse and her records suggest that her anxiety symptoms were caused by or exacerbated by her addiction." (T. 16, 368-495.) The ALJ stated that Plaintiff's "provider noted that [she] often does not take her psychiatric medications and provides various excuses, including not [being] able to get the prescription from the pharmacy due to transportation issues[,]" but her provider also noted "[she] has no problems getting to the pharmacy to pick up her oxycodone." (T. 17, 406.) The ALJ concluded that Plaintiff's "lack of

13

ongoing mental health treatment and poor compliance with prescribed psychiatric medications, suggest that her symptoms are not as severe as she alleges." (T. 17-18.)

In February 2015, consultative examiner Dr. Slowik diagnosed a specific learning disorder, panic disorder, PTSD, and recurrent major depressive disorder and opined that Plaintiff had mild limitations in the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and learn new tasks; moderate limitations in the ability to perform complex tasks independently and make appropriate decisions; and marked limitations in the ability to maintain a regular schedule, relate adequately with others, and appropriately deal with stress. (T. 343-44.) Dr. Slowik indicated that Plaintiff's difficulties were caused by learning difficulties, depression, and anxiety, and that the results of the evaluation appeared to be consistent with psychiatric and learning problems which might significantly interfere with Plaintiff's daily ability to function. (T. 344.) The ALJ afforded partial weight to Dr. Slowik's opinion only to the extent that it was supported by her findings upon examining Plaintiff. (T. 18.) The ALJ noted that the examination findings demonstrated Plaintiff "would have some problems maintaining attention and concentration and dealing with stress in the workplace, but not to the degree Dr. Slowik's opinion suggests," and stated that the "remainder of Dr. Slowik's opinion was given some weight in determining [Plaintiff's] residual functional capacity." (T. 18.)

In February 2017, Plaintiff's counselor Ms. Thompson-Hill completed a medical source statement noting a diagnosis of agoraphobia with panic disorder and indicating

14

Plaintiff would be off-task more than 33 percent of the day and absent three or more days per month. (T. 496.) Ms. Thompson-Hill opined that Plaintiff has marked limitations in concentration, persistence, and interacting with others, and extreme limitations with stress. (T. 497.) She indicated that her opinion covered the time period between February 2014 and February 2017. (T. 496.) The ALJ afforded this opinion no evidentiary weight, noting that there was "no documentation in the medical records that [Plaintiff] was ever seen by this provider" and there were no records from this provider. (T. 19.) The ALJ also noted that Ms. Thompson-Hill did not cite to any objective clinical findings, but recited Plaintiff's subjective complaints. (*Id.*)

## 2. The Court's Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for various reasons. (Dkt. No. 9, at 10-22 [Pl.'s Mem. of Law]; Dkt. No. 12, Attach. 1, at 2-4 [Pl.'s Reply Mem. of Law].) The Court finds these arguments unpersuasive. First, although Plaintiff maintains that undisputed medical opinion established that she has moderate or greater limitations in work pace and/or attendance, interacting with the general public, accepting instructions, and responding appropriately to criticism from supervisors, the Court's review of the ALJ's decision and of the record does not support these arguments. The ALJ's decision indicates that she fully reviewed and discussed the evidence before him in reaching Plaintiff's RFC, implicitly indicating greater limitations in these areas were not warranted by that evidence. (T. 11-20.) Further, as detailed above, in weighing the opinion evidence, the ALJ provided enough reasoning for affording less weight to the greater limitations

15

opined by Dr. Slowik and Ms. Thompson-Hill, and instead afforded greater weight to Dr. Juriga's non-examining opinion. (T. 18-20.) The ALJ adequately explained how the overall record did not support Plaintiff's alleged symptoms. (T. 15-19.)

It is within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). This Court will not now reweigh the evidence that was before the ALJ. *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

It is also within the ALJ's purview to rely on the opinion of a non-examining state Agency consultant such as Dr. Juriga who, as the ALJ indicated, reviewed the evidence and had knowledge of the disability programs. (T. 19.) *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if

16

supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). Although Plaintiff asserts that the opinions of such non-examining consultants "are of little value," the ALJ was entitled to review the evidence before him and resolve the conflicts therein in order to draw conclusions on Plaintiff's RFC which are supported by the overall record. (Dkt. No. 12, Attach. 1, at 3 [Pl.'s Reply Mem. of Law].)

Second, the Court's review of the record and the ALJ's decision does not find support for Plaintiff's arguments that the ALJ made unsupported factual conclusions or improperly substituted his opinion on issues related to limitations in work pace/attendance and Plaintiff's course of treatment. (Dkt. No. 9, at 10-22 [Pl.'s Mem. of Law]; (Dkt. No. 12, Attach. 1, at 2-4 [Pl.'s Reply Mem. of Law].) There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded only from the latter. *See Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendations adopted by* 2016 WL 3951150 (N.D.N.Y. July 20, 2016)) (noting that, although it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record). Further, the ALJ's analysis makes

17

clear that he did not discount Plaintiff's claims of disabling symptoms simply because she seemingly failed to seek mental health treatment, but also because neither her activities of daily living nor clinical findings from her other treatment records were in line with those claims. (T. 15-19.) As summarized above, the ALJ provided a sufficiently detailed analysis and reasons for the conclusions he reached in determining Plaintiff's RFC and evaluating her symptoms. Thus, the ALJ's analysis of the evidence as well as the resulting RFC are supported by substantial evidence.

### B. Whether Substantial Evidence Supports the ALJ's Step Five Finding

Although the claimant has the general burden to prove that he or she has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F.

18

Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff has no past relevant work and that she can perform other jobs existing in significant numbers in the national economy, based on VE testimony. (T. 20-21, 65-66.) Plaintiff argues that the Step Five determination is not supported by substantial evidence because the ALJ's RFC determination did not account for the full extent of Plaintiff's limitations (including those related to work pace, absenteeism, memory, and attention/concentration) and was not supported by substantial evidence. (Dkt. No. 9, at 22 [Pl.'s Mem. of Law].) The Court finds this argument unpersuasive. As discussed in Section III.A. of this Decision and Order, the Court finds that the ALJ's analysis regarding the evidence and the resulting RFC are supported by substantial evidence. The ALJ's decision includes adequate explanation for his findings on Plaintiff's alleged limitations and Plaintiff has not established further limitations than those included in the RFC. Thus, the Court finds that the ALJ did not err in relying on the VE testimony which was in response to a question reflecting the ALJ's RFC determination. (T. 14, 65-66.) Remand is therefore not required on this basis.

## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED,** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED,** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED,** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

ORDERED, that Plaintiff's Complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: July 24, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge